# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **COREY D. MILLMAN,** : | | |
| : | **CIVIL ACTION NO.:** | |
| Plaintiff, : | | |
| : | 3:21-cv-01363 (     ) | |
| v. : | | |
| : | | |
| **OUTBACK STEAKHOUSE OF** : | | |
| **FLORIDA, LLC, and OSI** : | | |
| **RESTAURANT PARTNERS, LLC,** : | | |
| : | | |
| Defendants. : | October 14, 2021 | |

## COMPLAINT

1. During his 14-plus years as a manager for the Outback Steakhouse chain of restaurants, Corey Millman turned around not one but two underperforming locations. When he took over the Wilton, Connecticut Outback in 2013, it ranked in the bottom 10% of Outback's nearly 650 restaurants. By the end of 2015, his leadership had brought the Wilton location into the top 3% of all Outback restaurants based on target performance, and for the next five years, he kept the location in Outback's nationwide top 25.

2. In April 2020, Mr. Millman contracted COVID-19, and for over a month, he struggled to breathe. Fortunately, the disease subsided, and by mid-May, he was finally out of the woods medically. But just as he was ready to return from his protected leave under the Family and Medical Leave Act, Outback told him that it had launched an investigation into his restaurant.

3. Two weeks later, on June 4, 2020, Outback terminated Mr. Millman. But the two reasons Outback gave were aspects of Mr. Millman's job performance about which one or more senior Outback leaders had been aware for years.

4. If Mr. Millman had not been diagnosed with COVID-19 and taken a protected medical leave, he would still be running the Wilton, Connecticut Outback today.

5. Accordingly, Mr. Millman brings claims for discrimination, interference, and retaliation, pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (ADA); the Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. § 46a-60(b)(1); and the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*

6. Mr. Millman demands a jury trial on all claims so triable.

## I. PARTIES

7. The plaintiff, Corey D. Millman, is a citizen of Connecticut.

8. The defendant, Outback Steakhouse of Florida, LLC is a limited liability company formed under the laws of Florida and with a principal place of business in Florida.

9. The defendant, OSI Restaurant Partners, LLC is the principal member of the defendant Outback Steakhouse of Florida, LLC, and is also a limited liability company formed under the laws of Florida and with a principal place of business in Florida.

10. The defendants collectively operate Outback Steakhouse restaurants around Connecticut and the country.

11. Outback Steakhouse is a division and/or trademark of Bloomin' Brands Inc., which also operates Carrabba's Italian Grill, and Bonefish Grill, among other restaurant chains.

12. The defendants collectively employ 50 or more employees in Connecticut.

13. Alternatively, the defendants (along with Bloomin' Brands Inc.) jointly employ 50 or more employees in Connecticut.

14. At all relevant times mentioned herein, the defendants were Mr. Millman's employer within the meaning of the ADA, the CFEPA, and the FMLA.

## II. JURISDICTION AND VENUE

15. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331.

16. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because the events or omissions giving rise to the asserted claims occurred herein.

17. This Court has supplemental jurisdiction over the plaintiff's state law claims, pursuant to 28 U.S.C. § 1367, because they form part of the same case or controversy as the federal law claims.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

18. The plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities (CHRO) alleging discrimination and retaliation.  The complaint was dual filed with the federal Equal Employment Opportunity Commission (EEOC).

19. The complaint was filed in a timely manner insofar as it was filed within 180 days of the defendants' last discriminatory and retaliatory acts against the plaintiff.

20. The plaintiff received a Release of Jurisdiction from the CHRO, dated August 31, 2021.

21. The plaintiff received a Notice of Right to Sue from the EEOC, dated September 9, 2021.

22. The plaintiff filed this Complaint within 90 days of his receipt of the agencies' releases of jurisdiction.

## IV. STATEMENT OF FACTS

### A. Corey Millman's Job Performance Is Outstanding.

23. Defendants Outback Steakhouse of Florida, LLC and OSI Restaurant Partners, LLC (collectively "Outback") initially hired Corey Millman as a manger in training in 2005.

24. After approximately 18 months, he was promoted to manager, and in 2008 Mr. Millman was offered a contract to become a proprietor of an Outback restaurant, which he accepted.

25. As a proprietor, Mr. Millman paid a $10,000 buy-in in exchange for the right to a small share of the profits from his location. He remained at all times Outback's employee.

26. Mr. Millman initially worked in Orange County, NY, where he turned around an underperforming restaurant, and in 2013, Outback asked him to move to Wilton, Connecticut, where the proprietor had been recently terminated.

27. That first year was a struggle, with the Wilton location ranking near the bottom of Outback's almost 650 locations in target performance. In time and with hard work, though, Mr. Millman again salvaged an underperforming operation. By the end of 2014, the Wilton restaurant ranked No. 21 nationally in target performance, and it has never been lower since; it ended 2019 ranked No. 20.

28. In January 2020, for Mr. Millman's 2019 annual review, his regional manager Marc Barnes did not offer any substantive comments, saying simply, in substance: "I don't have to bother you because your restaurant runs well."

B. **Mr. Millman Contracts COVID-19 and Takes Protected Medical Leave.**

29. In April 2020, Mr. Millman developed a fever that would not go away. He went to urgent care and eventually was diagnosed with COVID-19. Over the next few weeks, he was seriously ill, losing more than 20 pounds.

30. Mr. Millman wanted to return to work, but he was just too sick. He told Mr. Barnes that he needed to take time off because of COVID, and Mr. Barnes agreed.

31. Throughout his illness, Mr. Millman kept Mr. Barnes apprised of his status. In early May, Mr. Millman still had low oxygen levels and difficulty breathing, and he told Mr. Barnes the disappointing news that he would be out at least two more weeks until after Mother's Day – Outback's busiest day of the year.

32. A few days later, Mr. Millman's regional vice president Andy Simpson told him that he needed to formalize his leave.

33. Mr. Millman chose to take unpaid leave from Outback under the Family and Medical Leave Act and to apply for coverage under his short-term disability insurance.

   **C.**  **Outback Terminates Mr. Millman for Pretextual Reasons.**

34. A couple of weeks later, in mid-May, Mr. Millman was finally feeling healthy enough to return to work. As he was preparing to come back, Outback's senior director for labor and employment Jacilyn Jolly told him that he was under investigation.

35. The three purported reasons for the investigation were pretext for discrimination and/or retaliation.

36. First, Outback accused Mr. Millman of failing to pay overtime to a janitorial employee named Edward Younger.

37. That was false. Mr. Millman ensured that Mr. Younger's timecards always reflected the true hours that Mr. Younger worked and that Mr. Younger was paid properly for those hours; his regional manager Marc Barnes had access to the timecards; and Mr. Millman had previously discussed his method of paying Mr. Younger with Mr. Barnes and obtained his express verbal approval.

38. Second, Outback accused Mr. Millman of violating a company policy that three employees be present in the restaurant at all times.

39.     That likewise was not the true reason for the investigation, because every Outback restaurant violated that rule.  Indeed, it was impossible to follow that policy with the staffing constraints that Outback imposed on its locations.  Mr. Barnes knew it, and he therefore advised Mr. Millman to structure his location's staffing so that fewer than three employees would be at the restaurant at any given time.

40.     Third, Outback accused Mr. Millman of not having a satisfactory security system for the restaurant.

41.     That likewise was not the true reason for the investigation, because Mr. Barnes had previously told Mr. Millman that eight of the 10 restaurants in his region did not have satisfactory security systems and, upon information and belief, Mr. Millman was the only manager in Mr. Barnes's region who was investigated concerning his location's security system.

42.     In early June, without the "fair hearing" Outback had promised him, Mr. Millman was terminated.

43.     Mr. Millman's termination deprived him of his sole source of income.  It also purportedly resulted in the forfeiture of part of his Outback proprietor buy-in.

V.      **LEGAL CLAIMS**

**FIRST CLAIM FOR RELIEF:
DISCRIMINATION,
IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT,
42 U.S.C § 12112 – AS TO ALL DEFENDANTS**

44.     All allegations in Sections I through IV are incorporated herein as if fully pled in this Count.

45.     Mr. Millman was a person with a disability within the meaning of the ADA insofar as he had a physical impairment that substantially limited one or more major life activities, had a history of such the same, and/or was regarded as having the same.

46. Mr. Millman's disability was a but-for cause of Defendants' decision to take one or more adverse employment actions against him.

47. Defendants' unlawful conduct was committed willfully or with reckless disregard for Mr. Millman's right to be free from disability discrimination.

48. As a result of Defendants' conduct, Mr. Millman suffered damages.

**SECOND CLAIM FOR RELIEF:
DISCRIMINATION,
IN VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT,
CONN. GEN. STAT. § 46a-60(b)(1) – AS TO ALL DEFENDANTS**

49. All allegations in Sections I through IV are incorporated herein as if fully pled in this Count.

50. Mr. Millman was a person with a disability within the meaning of the CFEPA insofar as he had a chronic physical impairment.

51. Mr. Millman's disability was a motivating factor in Defendants' decision to take one or more adverse employment actions against him.

52. Defendants' unlawful conduct was committed willfully or with reckless disregard for Mr. Millman's right to be free from disability discrimination.

53. As a result of Defendants' conduct, Mr. Millman suffered damages.

**THIRD CLAIM FOR RELIEF:
RETALIATION, IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT,
29 U.S.C. § 2615 – AS TO ALL DEFENDANTS**

54. All allegations in Sections I through IV are incorporated herein as if fully pled in this Count.

55. Mr. Millman exercised rights protected by the FMLA.

56. Mr. Millman's exercise of his rights under the FMLA was a motivating factor in Defendants' decision to take one or more adverse employment actions against him.

57. As a result, Mr. Millman suffered damages.

**FOURTH CLAIM FOR RELIEF:**
**INTERFERENCE, IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT,**
**29 U.S.C. § 2615 – AS TO ALL DEFENDANTS**

58. All allegations in Sections I through IV are incorporated herein as if fully pled in this Count.

59. Mr. Millman exercised rights protected by the FMLA.

60. Mr. Millman was entitled to reinstatement to the position he held with Outback before he took FMLA leave.

61. Defendants did not return him to the same or substantially the same position following his FMLA leave

62. Defendants' failure to reinstate Millman to the position he held with Outback before he took FMLA leave was an interference with his rights.

63. As a result, Mr. Millman suffered damages.

* * *

WHEREFORE, the plaintiff requests that this Court assume jurisdiction over this Complaint, enter judgment in his favor, and award him:

1. Economic damages;

2. Compensatory damages;

3. Liquidated damages;

4. Punitive damages;

5. Interest, pursuant to § 37-3a of the Connecticut General Statutes;

6. Reasonable attorney's fees and costs; and

7. Such other relief as may be just and equitable.

           **RESPECTFULLY SUBMITTED,**
           **THE PLAINTIFF**

By:    */s/ Joshua R. Goodbaum*
       Joshua R. Goodbaum *(ct28834)*
       Amanda M. DeMatteis *(ct29413)*
       Elisabeth J. Lee *(ct30652)*
       GARRISON, LEVIN-EPSTEIN
           FITZGERALD & PIRROTTI, P.C.
       405 Orange Street
       New Haven, CT  06511
       Tel.: (203) 777-4425
       Fax: (203) 776-3965
       jgoodbaum@garrisonlaw.com
       adematteis@garrisonlaw.com
       elee@garrisonlaw.com

**Please enter our appearances on behalf of the plaintiff in this matter.**